```
         IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

                        CHARLESTON
```

**BOBBY D. PLEASANT,**

    **Plaintiff,**

v.                                                    CASE NO. 2:07-cv-00646

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

    **Defendant.**

## M E M O R A N D U M   O P I N I O N

This is an action seeking review of the decision of the Commissioner of Social Security denying Plaintiff's application for disability insurance benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. Both parties have consented in writing to a decision by the United States Magistrate Judge.

Plaintiff, Bobby D. Pleasant (hereinafter referred to as "Claimant"), filed an application for DIB on October 20, 2005, alleging disability as of September 15, 2005, due to heart failure, high blood pressure and sleeping problems. (Tr. at 46-48, 72.) The claim was denied initially and upon reconsideration. (Tr. at 37-39, 41-45.) Claimant requested a hearing before an Administrative Law Judge ("ALJ"). The hearing was held on November 15, 2006, before the Honorable John Murdock. (Tr. at 221-45.) By decision dated March 14, 2007, the ALJ determined that Claimant was not entitled to benefits. (Tr. at 12-18.) The ALJ's decision

became the final decision of the Commissioner on September 24, 2007, when the Appeals Council denied Claimant's request for review. (Tr. at 4-7.) On October 17, 2007, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5), a claimant for disability has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. § 404.1520 (2007). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. § 404.1520(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. § 404.1520(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. § 404.1520(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. § 404.1520(d). If it does, the claimant is found disabled and

awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e).  By satisfying inquiry four, the claimant establishes a prima facie case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. § 404.1520(f) (2007).  The Commissioner must show two things:  (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy.  McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date. (Tr. at 14.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of history of chronic heart failure and obesity.  (Tr. at 14.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 15.)  The ALJ then

found that Claimant has a residual functional capacity for light work, reduced by nonexertional limitations. (Tr. at 15.) As a result, Claimant can return to his past relevant work as a security guard, telemarketer and school counselor. (Tr. at 17.) On this basis, benefits were denied. (Tr. at 18.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Cellebreze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the

Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was fifty-one years old at the time of the administrative hearing. (Tr. at 46, 221.) Claimant graduated from high school and earned a bachelor of arts degree in education. (Tr. at 224-25.) In the past, he worked as a counselor/teacher, as a telemarketer and as a security guard. (Tr. at 225-26.)

The Medical Record

The court has reviewed all evidence of record, including the medical evidence of record, and will summarize it briefly below.

On January 26, 2006, Nilima Bhirud, M.D. examined Claimant at the request of the State disability determination service. Claimant reported a history of congestive heart failure in 1993, and a stroke in 1995, from which he fully recovered. Claimant complained of back problems, and reported he had seen a chiropractor in the past. He was not seeing anyone now for this condition and had never been to a pain clinic. Claimant reported intermittent pain made worse by prolonged standing and walking. Claimant also reported a history of insomnia, pain in both hands and in the knees. (Tr. at 142.) Dr. Bhirud found that Claimant had no evidence of any rales or auscultation in his lungs. He was not having any respiratory distress on walking around. He had mild lumbar tenderness. Forward flexion was 70 degrees. Claimant could do heel-walking and toe-walking, but could not squat. Claimant had

tenderness over both hips, knees and both ankles and there was decreased range of motion as to these joints. Dr. Bhirud also noted Claimant's history of insomnia. (Tr. at 145.)

A State agency medical source completed a Physical Residual Functional Capacity Assessment on February 3, 2006, and opined that Claimant could perform light level work with an inability to climb ladders, ropes and scaffolds, balance and crawl, an occasional ability to climb ramps and stairs, stoop, kneel, and crouch, a need to avoid even moderate exposure to hazards and a need to avoid even concentrated exposure to extreme heat, cold, vibration, fumes, odors, dusts, gases and poor ventilation. The source wrote that Claimant "is credible. His restrictions are due to his morbid obesity which is level III. Has [hypertension] under good control. Has a [history of congestive heart failure] with swelling of his legs but presently there is no evidence for [congestive heart failure]. He is reduced to light work with postural limitations." (Tr. at 148-53.)

The record includes treatment notes from West Virginia Health Right, Inc. dated March 8, 2002, July 26, 2002, March 17, 2003, and September 15, 2003. (Tr. at 156-73.) On March 8, 2002, Claimant's hypertension was controlled. (Tr. at 159.) On July 26, 2002, Claimant had a lesion on his head, which was removed. (Tr. at 158.) On March 17, 2003, Claimant had had a twenty-four pound weight gain since August of 2002. Overall, Claimant was "doing

ok." (Tr. at 157.) The diagnoses included hypertension, history of congestive heart failure and morbid obesity. (Tr. at 157.) On September 15, 2003, Claimant's diagnoses remained the same. (Tr. at 156.)

The record includes treatment notes from Renal Consultants, PLLC, dated May 8, 2000, to April 10, 2006. (Tr. at 174-88.) On April 21, 2004, Claimant complained of pain in the left ankle and erratic sleep. (Tr. at 178.) Claimant was diagnosed with morbid obesity, chronic renal failure - stable, hypertension and constipation, among others. Claimant was encouraged to lose weight. (Tr. at 177.) On October 6, 2004, Claimant reported pain in his ankles. Claimant also reported he was sleeping well. The diagnoses remained largely the same. (Tr. at 176.) On April 11, 2005, Claimant reported his sleep was fair. The diagnoses remained largely the same. (Tr. at 175.) On April 10, 2006, Claimant reported erratic sleeping, but he had no aches and pains. The diagnoses remained largely the same. (Tr. at 174.)

On May 16, 2006, a State agency medical source completed a Physical Residual Functional Capacity Assessment and opined that Claimant could perform light level work with an inability to climb ladders, ropes and scaffolds, an occasional ability to climb ramps/stairs, balance, stoop, kneel, crouch and crawl and a need to avoid concentrated exposure to extreme cold, vibration, fumes, odors, dusts, gases, poor ventilation and hazards. The source

opined that the "allegations of total disability [are] not fully credible and [the residual functional capacity] of light consistent with medical and non medical evidence and its impact on [activities of daily living] normal neuro and forward flexion of back was 70 degrees."  (Tr. at 189-94.)

The record includes an additional treatment note from Renal Consultants, PLLC dated October 9, 2006.  In addition to the diagnoses noted above, Claimant also had anemia.  (Tr. at 200.)

On September 15, 2006, Claimant reported to Health Plus after injuring his foot.  Claimant had a nondisplaced nonarticular fracture of the fifth toe proximal phalanx.  (Tr. at 207.)  On October 13, 2006, Claimant's foot pain had improved, and he had good range of motion.  An x-ray showed a small amount of callous formation surrounding the fracture.  (Tr. at 209.)

On August 9, 2006, Claimant underwent a sleep study and was diagnosed with severe obstructive sleep apnea with good response to CPAP.  (Tr. at 215.)

The record includes an additional treatment note from Renal Consultants, PLLC.  Claimant's diagnoses remained largely the same.  (Tr. at 220.)

<u>Claimant's Challenges to the Commissioner's Decision</u>

Claimant asserts that the Commissioner's decision is not supported by substantial evidence because (1) the ALJ failed to properly evaluate Claimant's pain and credibility; (2) the ALJ

relied on only part of the evidence of record; and (3) the ALJ failed to consider Claimant's impairments in combination. (Pl.'s Br. at 8-12.)

The Commissioner argues that (1) substantial evidence supports the ALJ's credibility determination; (2) the ALJ considered all the evidence of record before determining that Claimant was not disabled; and (3) the ALJ correctly considered Claimant's impairments in combination. (Def.'s Br. at 7-15.)

The court finds that the ALJ's pain and credibility analysis is in keeping with the applicable regulation and case law and is supported by substantial evidence. 20 C.F.R. § 404.1529(b) (2007); SSR 96-7p, 1996 WL 374186 (July 2, 1996); Craig v. Chater, 76 F.3d 585, 594 (4th Cir. 1996). The ALJ determined that Claimant had medically determinable impairments that could reasonably be expected to cause the alleged symptoms. (Tr. at 17.) The ALJ proceeded to the second step in the pain analysis, and his decision contains a careful consideration of Claimant's daily activities, the location, duration, frequency, and intensity of Claimant's symptoms, precipitating and aggravating factors and medication side effects. (Tr. at 17.)

The ALJ determined that Claimant's "allegations of pain and limitation are not credible." (Tr. at 17.) The ALJ explained that Claimant was diagnosed with congestive heart failure in 1993, but continued to work until September 2005. In addition, the ALJ

observed there is no evidence from the record of medication side effects that would interfere with Claimant's ability to perform his past relevant work. The ALJ reasoned that Claimant "minimized his activities of daily living but the undersigned finds no medical basis for such restricted daily activities in the credible evidence of record." (Tr. at 17.)

Claimant complains that the ALJ penalized him for continuing to work as long as he could. (Pl.'s Br. at 10.) It was not unreasonable for the ALJ to conclude that Claimant's ability to work after having congestive heart failure in 1993, supports a finding that Claimant's subjective complaints were not entirely credible.

The court further finds that the ALJ did not ignore evidence of record. Claimant asserts that the ALJ "discounted evidence regarding the plaintiff's back and leg pain which affects his ability to sit/stand, bend, squat, walk and kneel." (Pl.'s Br. at 11.) It is unclear to the court to what evidence Claimant is referring. The medical evidence of record regarding Claimant's back and leg pain was minimal at best. In any event, the ALJ's residual functional capacity finding of light work, reduced by an inability to "climb ladders, ropes and scaffolds; he can only occasionally climb ramps and stairs; he can never stoop [sic; balance] and crawl; he can only occasionally stoop, kneel, and crouch; he needs to avoid concentrated exposure to temperature

extremes, vibration, fumes, odors, dusts, gases, and poor ventilation; and he needs to avoid even moderate exposure to hazardous machinery and dangerous heights" (Tr. at 15), adequately reflects Claimant's limitations and is supported by substantial evidence of record.  Indeed, the court notes that the ALJ afforded significant weight to both State agency sources, but his residual functional capacity reflects the more severe limitations opined by the State agency medical source who completed the first Physical Residual Functional Capacity Assessment on February 3, 2006.  (Tr. at 148-54.)

Finally, Claimant argues that the ALJ failed to consider Claimant's chronic heart failure, obesity, frequent urination and sleep apnea in combination. (Pl.'s Br. at 11.)  The court finds that the ALJ adequately considered Claimant's impairments alone and in combination in keeping with 20 C.F.R. § 404.1523 (2007).  In particular, in determining whether Claimant met or equaled the Listings, the ALJ considered Claimant's impairments in combination. (Tr. at 15.)  In addition, in assessing Claimant's subjective complaints and in arriving at a residual functional capacity finding, the ALJ considered Claimant's severe and nonsevere impairments in combination.  The ALJ found that Claimant's history of chronic heart failure and obesity were severe impairments, and his residual functional capacity finding reflects limitations resulting from these impairments. (Tr. at 15.)  The ALJ determined

11

that Claimant's chronic renal failure was not a severe impairment based on treatment notes from Renal Consultants indicating that this condition was stable. Likewise, Claimant's sleep apnea also was managed with the use of a CPAP machine. (Tr. at 14.) Nevertheless, as is required by Social Security Ruling ("SSR") 96-8p, in his pain and credibility analysis, the ALJ considered the "limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" SSR 96-8p, 1996 WL 362207, *34477 (July 2, 1996). In assessing Claimant's subjective complaints, the ALJ noted Claimant's testimony that he only sleeps for a half an hour at a time, but also observed that Claimant had good response to the CPAP machine. (Tr. at 17.)

After a careful consideration of the evidence of record, the court finds that the Commissioner's decision is supported by substantial evidence. Accordingly, by Judgment Order entered this day, the final decision of the Commissioner is AFFIRMED and this matter is DISMISSED from the docket of this court.

The Clerk of this court is directed to transmit copies of this Order to all counsel of record.

ENTER: March 6, 2009

*Mary E. Stanley*
Mary E. Stanley
United States Magistrate Judge